## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KENNETH WILLIAMS, on behalf of himself and all others similarly situated,<br><br>                                      Plaintiffs,<br><br>     v.<br><br>CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GENERALE DES ESTABLISSEMENTS MICHELIN SCA; COMPAGNIE FINANCIERE MICHELIN SA; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC.; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; BRIDGESTONE AMERICAS, INC.; AND DOE COMPANIES 1-100,<br><br>                                      Defendants. | No.<br><br><br><br>CLASS ACTION COMPLAINT<br><br><br><br>DEMAND FOR JURY TRIAL |

Plaintiff brings this action on behalf of himself individually and on behalf of a Plaintiff class consisting of all persons and entities who purchased Tires directly from a Defendant or co-conspirator in the United States (the "Class") from at least January 1, 2020 until the present (the "Class Period"). Plaintiff brings this action

under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and demands a trial by jury.

## I.     NATURE OF ACTION

1.     Defendants are the largest tire companies in the world, dominating a global market valued at $180 billion in 2021[1]. Beginning in at least 2020 and carrying on through the present, Defendants entered into a conspiracy to fix, maintain, and raise the price of Tires being sold to purchasers to supracompetitive levels. Defendants engaged in this concerted scheme through a variety of mechanisms including creating artificial supply shortages, data sharing, and signaling price increases via public statements and meetings for industry members. The result was that Defendants overcharged direct purchasers such as Plaintiff by inflating prices.

2.     Plaintiff is a member of a class of entities that purchased Tires directly from   Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagne Generale Des Etablissements Michelin; Michelin North America, Inc.; Nokian Tyres PLC; Nokian Tyres, Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.P.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc.; and/or Does 1-100 (together

---

[1]     Ex.     1,     2022     Universal     Registration     Document (https://www.michelin.com/en/finance/regulated-information/annual-report/) (April 11, 2023).

"Defendants"). Beginning in 2020, Plaintiff and members of the Class purchased Tires directly from the Defendants, not knowing of their scheme to maintain prices at artificially high levels.  Economic evidence discussed throughout this Complaint demonstrates that, but for Defendants' conspiracy, prices for Tires would have been lower.

3.     Plaintiff's allegations of Defendants' unlawful agreement to fix the price of Tires at supracompetitive prices is supported by, among other things: (a) Defendants' sudden and dramatic parallel price increases which, absent a conspiracy to fix prices, ran contrary to their economic interests; (b) European Commission dawn raids of Defendants' offices; (c) the high level of market concentration in the Tires market; (d) significant barriers to entry; and (e) the multitude of opportunities for Defendants' employees to conspire with one another to fix the price of Tires coupled with their incentive to achieve such an unlawful end.

4.     The COVID-19 pandemic in 2020 caused "a very bad year" for the Tire industry due to the dramatic decrease in travel.[2]

5.     Because of the decrease in travel, Tires needed to be replaced far more infrequently due to the lack of normal wear-and-tear as well as construction, traffic, and other accident-causing activity. But if any one of Defendants were to unilaterally

_____

[2] Ex. 2, Smithers forecasts the global tire market to reach $280 billion in 2024, (https://www.smithers.com/resources/2020/may/smithers-forecasts-the-global-tire-market-to-reach) (Dec. 22, 2023).

raise its Tire prices to counteract this decrease in demand, it would risk driving its own market share to one of its competitors.

6.      This threat to any singular Defendant's market share was circumvented when Defendants agreed to coordinate price increases in violation of antitrust laws.

7.      Nationwide inflation only compounded Defendants' incentive to set prices at supracompetitive rates. As the price of raw materials and logistics increased, Defendants' profits were threatened. This had a precipitous effect on the value of Defendants' stock; for example, in February of 2022, Defendant Goodyear's stock dropped 25% in a single day. In November, it dropped another 10%. The threat to Defendants' stock value provided an additional motivation for Defendants to pass high costs onto consumers.

8.      The success of this scheme is demonstrated by the conditions of the Tire market in 2023, when travel and Tire demand had returned to pre-COVID levels. Due to the suddenly stagnated nature of demand beginning in 2020 and continuing through the next two years, Defendants were left sitting on an excess supply of Tires. For example, in November 2023, the union president of Bridgestone Americas Inc. in Morrison, Tennessee stated that "Even with…lower production levels, we still have huge amounts of inventory—more than our warehouse can

4

handle. Our warehouse is full of truck and bus tires. In addition, we have 150 to 175…trailers on our plant's property that are full of tires."[3]

9.      If a market is operating competitively, when there is an excess supply prices should decrease; however, the global tire industry is expected to reach a record-high value of $280 billion by 2024.

10.      On January 30, 2024, the European Commission announced that it was carrying out inspections and raids at Defendants' offices "over concerns they violated the bloc's antitrust rules by coordinating prices, including through public communications."[4] The probe is centered around new and replacement Tires for passenger cars, trucks, and buses.[5]

11.      As a result of Defendants' unlawful conduct, Plaintiff and the Class paid artificially inflated prices for Tires during the Class Period. Such prices exceeded the amount they would have paid if the price for Tires had been determined

---

[3] Ex. 3, Joy Kopcha, *Do Tire Tiers Exist, and Are They Competitive?*, Modern Tire Dealer (Nov. 7, 2023) (https://www.moderntiredealer.com/suppliers/article/33014539/do-tire-tiers-exist-and-are-they-competitive).

[4] Ex. 4, EU Tire Cartel Probe Targets Michelin, Continental, Matthew Perlman, Law 360 (https://www.law360.com/articles/1791624/eu-tire-cartel-probe-targets-michelin-continental) (Jan. 30, 2024).

[5] Ex. 5, Commission carries out unannounced antitrust inspections in the tyres sector, European Commission (https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561) (Jan. 30, 2024).

by a competitive market. Plaintiff and the Class have therefore been injured by Defendants' conduct.

## II.   JURISDICTION AND VENUE

12.    Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. §26) to secure injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332(d), 1337(a) and 1367, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

13.    This Court also has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interests and costs; and (3) Defendants and at least one Class member are domiciled in different states.

14.    Venue is appropriate in this District under 28 U.S.C. § 1391(b), (c) and (d), and 15 U.S.C. 15(a) and 22 because one or more Defendants resided or transacted business in this District, is licensed to do business or is doing business in this District, because a substantial portion of the affected interstate commerce described herein was carried out in this District, and a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this District.

15.     This Court has personal jurisdiction over each Defendant because, *inter alia*, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Tires throughout the United States, including in this District; (c) had substantial contacts with the United States, including in this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct, foreseeable, and intended effect of causing injury to the business or property of persons residing in, located in, or doing business throughout the United States, including in this District.[6]

16.     The activities of the Defendants and all co-conspirators, as described herein, were within the flow of, were intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign and interstate commerce of the United States.

---

[6] In Michigan, Defendant Bridgestone Corporation has over 120 commercial Tire dealer locations in addition to the third-party retailers that stock Bridgestone Tires; Defendants The Goodyear Tire & Rubber Company, Continental Tire the Americas, LLC, Pirelli Tire LLC, Nokian Tires Inc., and Michelin North America Inc. all distribute and sell Tires to and through dozens, if not hundreds, of commercial entities in Michigan.

### III.   PARTIES

**A.   Plaintiff**

17.    Plaintiff Kenneth Williams is a resident of the state of Michigan. During the Class Period, Plaintiff Williams directly purchased Tires from and produced by one or more Defendants or their co-conspirators. Plaintiff was injured by Defendants' conduct discussed herein when he paid a supracompetitive price for Tires.

**B.   Defendants**

**Continental Defendants**

18.    Defendant Continental Aktiengesellschaft ("Continental AG")," is a German company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental AG has four group sectors: Automotive, Tires, ContiTech, and Contract Manufacturing.[7] Defendant Continental AG's 2022 Annual Report states that the tire group sector "achieved a particularly positive result…with an adjusted EBIT margin of 13.1 percent."[8] Further, Defendant Continental AG's total tire sales amounted to 14 billion euros globally.[9] During the Class Period, Defendant Continental AG and/or its predecessors, wholly owned or controlled subsidiaries, or

_____

[7]    Ex.    6,    Continental    2022    Annual    Report,    pg.    26 (/https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf).

[8] *Id.* at 4.

[9] *Id.* at 81.

affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

19.     Defendant Continental Tire the Americas, LLC ("Continental U.S.") is a United States subsidiary of Continental AG incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. During the Class Period, Defendant Continental U.S. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Michelin Defendants**

20.     Defendant Compagnie Générale des Établissements Michelin SCA ("Defendant CGEM") is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. Defendant CGEM's Universal Registration Document for 2022 reported that "tire-related sales account for nearly 95% of the consolidated total", including replacement Tires for passenger car and two-wheelers and original tires for trucks, mining, and aircraft vehicles.[10] During the Class Period, Defendant CGEM and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in

---

[10]     Ex.   7,   Universal   Registration   Document   2022,   at   16 (https://www.michelin.com/en/finance/regulated-information/annual-report/) (April 11, 2023).

interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

21.     Compagnie Financière Michelin SA ("Defendant CFM"), is a wholly-owned subsidiary of CGEM that owns most of the Group's Tire manufacturing, sales and research companies outside of France and coordinates their operations.[11] During the Class Period, Defendant CFM and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

22.     Defendant Michelin North America, Inc. ("Defendant Michelin N.A.") is a U.S. subsidiary of CGEM incorporated under the laws of the State of New York with its principal place of business at One Parkway South, Greenville, SC 29615-5022. During the Class Period, Defendant Michelin N.A. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Defendant Michelin also wholly owns the Goodrich Corporation and Uniroyal Tires, each of which manufacture and sell Tires throughout the United States.

---

[11] *Id.*

**Nokian Tyres Defendants**

23.     Defendant Nokian Tyres plc ("Defendant Nokian plc") is organized under the laws of Finland with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which includes subsidiaries worldwide. Defendant Nokian Tyres plc develops and manufactures Tires for passenger cars, trucks, and heavy machinery. During the Class Period, Defendant Nokian plc and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

24.     Defendant Nokian Tyres Inc. ("Defendant Nokian Inc.") is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian plc. During the Class Period, Defendant Nokian Inc. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

25.     Defendant Nokian Tyres U.S. Operations LLC ("Defendant Nokian U.S.") is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. During the Class Period, Defendant Nokian U.S. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates

sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Defendant Goodyear**

26.    Defendant The Goodyear Tire & Rubber Company ("Defendant Goodyear") is a corporation organized under the laws of the State of Ohio with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. During the Class Period, Defendant Goodyear and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States. Defendant Goodyear also wholly owns Dunlop Tyres Limited, The Kelly Springfield Tire Company, and Cooper Tire & Rubber Company, each of which manufacture and sell Tires throughout the United States.

**Pirelli Defendants**

27.    Defendant Pirelli & C. S.p.A. ("Defendant Pirelli & C") is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy. Pirelli & C designs, manufactures, and distributes Tires for cars, motorcycles, and bicycles. During the Class Period, Defendant Pirelli & C and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

28.     Defendant Pirelli Tire LLC ("Defendant Pirelli Tire") is a subsidiary of Pirelli & C incorporated under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, GA 30161. Pirelli Tire maintains sales and marketing offices in New York City, Los Angeles, Detroit, Montreal and Atlanta, and a prestige flagship store in Los Angeles. During the Class Period, Defendant Pirelli Tire and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

**Bridgestone Defendants**

29.     Defendant Bridgestone Corporation ("Defendant Bridgestone Corp.") is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Bridgestone Corporation is the world's largest Tire and rubber company.[12] During the Class Period, Defendant Bridgestone Corp. and/or its predecessors, wholly owned or controlled subsidiaries, or affiliates sold Tires in interstate commerce, directly or through its wholly owned or controlled affiliates, to purchasers in the United States.

30.     Defendant Bridgestone Americas, Inc. ("BSAM") is a subsidiary of Bridgestone Corp. incorporated under the laws of Nevada with its principal place of

---

[12] Ex. 8, Bridgestone Home Page (https://www.ustires.org/bridgestone-americas-inc).

business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires to address the needs of a broad range of customers, including consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry and mining industries.[13] Defendant BSAM also owns Firestone Tire and Rubber Company, which operates twenty commercial retailers in Michigan and hundreds nationwide.

### Doe Defendants

31.    Doe Defendants 1-100 are other individuals or entities who engaged in or abetted the unlawful conduct by Defendants set forth in this Complaint. Plaintiff may amend this Complaint to allege the names of additional Defendants as they are discovered.

### Agents and Co-Conspirators

32.    The anticompetitive and unlawful acts alleged against the Defendants in this Complaint were authorized, ordered, or performed by Defendants' respective officers, agents, employees, or representatives while actively engaged in the management, direction, or control of Defendants' businesses or affairs.

33.    Each Defendant's agents operated under the authority and/or the apparent authority of its respective principals.

---

[13] *Id.*

34.     Each Defendant, through its respective subsidiaries, affiliates, and agents operated as a single unified entity.

35.     Various entities not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

36.     Each Defendant acted as the principal or agent of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged herein.

37.     When Plaintiff refers to a corporate family or companies by a single name, it is to be understood that Plaintiff is alleging that one or more employees or agents of entities within the corporate family are engaged in conspiratorial conduct on behalf of all Defendant companies within that corporate family.

38.     Furthermore, to the extent that subsidiaries within corporate families distributed the Tire products discussed in this Complaint, these subsidiaries played a significant role in the conspiracy because Defendants strove to ensure that prices paid for such products would not undercut their pricing agreements. Therefore, all Defendants' entities within the respective corporate families were active, knowing participants in the conspiracy to fix and maintain supracompetitive prices.

## IV.   FACTUAL ALLEGATIONS

### A.   Defendants Colluded to Set Prices of Tires at Supracompetitive Levels

39.    Beginning at least as early as January 1, 2020 and continuing into the present, Defendants colluded to raise and fix the price of Tires in the United States at supracompetitive levels.

40.    During the Class Period, the price of Tires has risen dramatically. As discussed *infra*, the price of Tires saw a 21.4% increase over a two-year period between 2021 and the middle of 2023—70% higher than core inflation.[14]

41.    Defendants raised their prices in concert, signaling their increases through public statements and on earning calls.

42.    For example, Defendants Michelin N.A., Nokian U.S., and Continental U.S. each raised their prices in the United States market between February 1, 2021 and March 1, 2021.[15]

---

[14] Ex. 9, ProPublica, *Overinflated: The Journey of Humble Tire Reveals Why Prices Are Still So High* (https://www.propublica.org/article/inflation-Tires-rubber-imports-high-prices) (May 3, 2023).

[15] Ex. 10, Motor Tire Dealer, *Michelin Will Raise Consumer, Commercial Prices on Feb. 1*, (https://www.modernTiredealer.com/topic-category/topics/article/11475158/michelin-will-raise-consumercommercial-prices-on-feb-1-2020-12-19) (Dec. 19, 2020); *see also* Ex. 11, Financial Statement Release 2020, Transcript, Nokian (Feb. 9, 2021) (https://nokiantyres.studio.crasman.fi/pub/web/attachments/interim_reports/Transcription%20Nokian%20Tyres%20 Q4%202022.pdf); *see also* Ex. 12, Motor Tire Dealer, *Continental Plans Price Hike on PLT Tires* (https://www.modernTiredealer.com/topics/industry-

43.    In March, Defendant Michelin N.A. announced it would again raise its prices effective April 1st, in the amount of 8%.[16] Defendant Goodyear followed suit: two days after Defendant Michelin N.A's announcement, Defendant Goodyear stated it too would be raising its prices by 8% "in response to changing market dynamics in the industry."[17] Within a week, Defendant Pirelli Tire announced a price increase of its own of 7% due to "changing market conditions."[18] By the end of March, 2021, Defendant BSAM too had announced a price increase of 8%.[19]

---

news/article/11474953/continental-plans-price-hike-on-plt-Tires2021-01-06)   (Jan. 6, 2021).

[16] Ex. 13, Motor Tire Dealer, *Michelin Will Raise Consumer Tire Prices on April 1*                    (https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raise-consumer-tire-prices-on-april-1-2021-03-01) (March 1, 2021).

[17] Ex. 14, Motor Tire Dealer, *Goodyear to Increase Consumer Tire Prices* (https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-to-increase-consumer-tire-prices-2021-03-03) (March 3, 2021).

[18] Ex. 15, Motor Tire Dealer, *Pirelli Will Raise Prices in U.S. on April 15* (https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raise-prices-in-us-on-april-15-2021-03-09) (March 9, 2021).

[19] Ex. 16, Motor Tire Dealer, *Bridgestone to Raise Consumer Tire Prices on May 1*                    (https://www.moderntiredealer.com/site-placement/featured-stories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24) (March 24, 2021).

44.   Less than two months later, in May 2021, Defendants Goodyear,[20] Continental U.S.,[21] and Pirelli Tire[22] announced additional price hikes.

45.   In August, 2021, Defendant Michelin N.A. announced another 8% price hike.[23] On the same day, Defendant Nokian U.S. stated it too would raise its prices.[24] The following week, Defendant Goodyear followed suit with an 8% increase of its own.[25] By the end of the month, Defendants Continental U.S. [26] and

---

[20] Ex. 17, Motor Tire Dealer, *Goodyear Plans Another Consumer Tire Price Hike* (https://www.modernTiredealer.com/topics/industry-news/article/11472039/goodyear-plans-another-consumer-Tireprice-hike) (May 3, 2021).

[21] Ex. 18, Motor Tire Dealer, *Continental Will Raise Consumer Prices in July* (https://www.modernTiredealer.com/topic-category/topics/article/11471940/continental-will-raise-consumer-Tireprices-in-july-1-2021-05-05) (May 5, 2021).

[22] Ex. 19, Motor Tire Dealer, *Pirelli Plans Another Price Hike* (https://www.modernTiredealer.com/topics/industry-news/article/11471596/pirelli-plans-another-price-hike) (May 18, 2021).

[23] Ex. 20, Typress, *Michelin announces North America price increases* (https://www.tyrepress.com/2021/08/michelin-announces-north-america-price-increases/) (Aug. 3, 2021).

[24] Nokian, 2021 Q2 Interim Report Transcript (Aug. 3, 2021) at 3.

[25] Ex. 21, Ratchet and Wrench, *Goodyear and Cooper Consumer Tire Prices Are Going Up* (https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper-consumer-tire-prices-are-going-up-modern-tire-dealer) (Aug. 10, 2021).

[26] Ex. 22, Tire Review, Continental Tire Announces Price Increase (https://www.Tirereview.com/continental-Tire-announces-price-increase/) (Aug. 30, 2021)

Pirelli Tire[27] had announced their third and fourth price increases of the year, respectively.

46.    At the end of 2021, Defendant Continental U.S. announced price increases that would be effective in the coming year[28]; Defendant Michelin N.A. likewise announced a 12% price increase to begin on January 1, 2022.[29]

47.    The price hikes showed no sign of slowing in the new year. In the first week of January 2022, Defendant Pirelli Tire announced up to a 10% price increase.[30] On March 1, 2022 both Defendants Continental U.S.[31] and Michelin N.A.[32] announced further price hikes. The following day, Defendant BSAM

---

[27] Ex. 23, Rubber News, *Pirelli raising prices for fourth time in 2021* (https://www.rubbernews.com/Tire/pirelli-raising-us-Tire-prices-oct-1) (Aug. 31, 2021)

[28] Ex. 24, Madeline Winer, *Continental Tire Announces Price Increases*, Tire Review (https://www.Tirereview.com/continental-Tire-announces-price-increase-2/) (Nov. 9, 2021).

[29] Ex. 25, PR Newswire, *Michelin Implements Price Increase Across Passenger Brand and Commercial Offers in North American Market* (https://www.prnewswire.com/news-releases/michelin-implementsprice-increase-across-passenger-brands-and-commercial-offers-in-north-american-market-301435108.html) (Dec 1, 2021).

[30] Ex. 26, Daneille Hess, Pirelli Announces Price Increases for Car, Light Truck Tires, Tire Review (https://www.Tirereview.com/pirelli-price-increases/) (Jan. 3, 2022).

[31] Ex. 27, Christian Hinton, *Continental Tire Announces Price Increase*, Tire Review (https://www.Tirereview.com/continental-Tire-announces-price-increase-3/) (Mar. 1, 2022).

[32] Ex. 28, Michelin Press Release, *Michelin Implements Price Increase Across Passenger Brands and Commercial Offers in North American Market*

announced a 10% price increase.[33] Despite having already raised prices in January, 2022, Defendant Pirelli Tire announced another 10% price increase in March.[34]

48.     In April 2022, Defendant Continental U.S. announced another price increase.[35] Defendant Michelin N.A.[36] announced a price increase in May, as did Defendants Pirelli Tire[37]. Goodyear[38] and BSAM[39] each announced price increases in June of that year.

---

(https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20ru bber%20and%20%20associated% 20supplies,2%2C%202022) (Mar. 1, 2022).

[33] Ex. 29, Christian Hinton, *Bridgestone Price Increase for Consumer Replacement Tires*, Tire Review (https://www.Tirereview.com/bridgestone-price-increase-2/) (Mar. 2, 2022).

[34] Ex. 30, Christian Hinton, *Pirelli Increases Price for Car and Light Truck Tires*, Tire Review (https://www.Tirereview.com/pirelli-increases-price-for-Tires/) (Mar. 23, 2022).

[35] Ex. 31, Tire Business, *Conti to raise U.S. Tire prices again* (https://www.Tirebusiness.com/news/conti-raise-us-Tire-prices-june-1) (Apr. 19, 2022).

[36] Ex. 32, Michelin, Press Release (https://michelinmedia.com/pages/blog/detail/article/c/a1176/#:~:text=GREENVIL LE%2C%20S.C.%2C%20May%2 02%2C,commercial%20products%20and%20service%20offers) (May 2, 2022).

[37] Ex. 33, Brian Coote, *Pirelli to Increase Prices on U.S. PLT Tires*, Tire Review (https://www.Tirereview.com/pirelli-increase-prices-plt-Tires/)  (May 17, 2022).

[38] Ex. 34, Tire Business, *Goodyear to raise North America Tire prices July 1* (https://www.Tirebusiness.com/news/goodyear-raise-north-america-Tire-prices-july-1) (June 15, 2022).

[39] Ex. 35, Brian Coote, *Bridgestone to Increase Consumer Tire Prices in U.S., Canada,* Tire Review (https://www.Tirereview.com/bridgestone-increase-prices/; https://www.Tirebusiness.com/news/goodyear-raisenorth-america-Tire-prices-july-1)  (June 6, 2022).

49.     The following quarter of 2022, Defendant BSAM announced an additional hike of 15%.[40]

50.     Defendants Michelin N.A. [41] and BSAM[42] each announced increases to prices to take place in January, 2023.

51.     The price increases described *supra* are reflected in the following chart:

| Defendant | Price Increase Amount | Date Increase Effective |
|---|---|---|
| Michelin N.A. | 5% | February 1, 2021 |
| Continental U.S. | 5% | March 1, 2021 |
| Nokian U.S. | Undisclosed | February 9, 2021 |
| Michelin N.A. | 8% | April 1, 2021 |
| Goodyear | 8% | April 1, 2021 |
| Pirelli Tire | 7% | April 15, 2021 |
| BSAM | 8% | May 1, 2021 |
| Goodyear | 8% | June 1, 2021 |
| Continental U.S. | Undisclosed | July 1, 2021 |
| Pirelli Tire | 6% | July 1, 2021 |
| Nokian U.S. | Undisclosed | August 8, 2021 |
| Michelin N.A. | 8% | September 1, 2021 |
| Goodyear | 8% | September 1, 2021 |
| Continental U.S. | Undisclosed | October 1, 2021 |
| Pirelli Tire | 8% | October 1, 2021 |
| Michelin N.A. | 12% | January 1, 2021 |

[40] Ex. 36, Christian Hinton, *Bridgestone Announces Price Increases up to 15% on Select Tires*, Tire Review (https://www.Tirereview.com/bridgestone-price-increase-3/) (Sept. 8, 2022).

[41] Ex. 37, Samuel Grom, *Michelin Introduces Prices Increases in Canada, U.S.*, Tire Review (https://www.Tirereview.com/michelin-price-increases/) (Dec. 13, 2022).

[42] Ex. 38, Samuel Grom, *Bridgestone Americas Increases Replacement Tire Prices*, Tire Review (https://www.Tirereview.com/bridgestone-americas-increased-prices/) (Dec. 13, 2022).

| Continental U.S. | Undisclosed | January 3, 2022 |
|---|---|---|
| Pirelli Tire | 10% | January 17, 2022 |
| Continental U.S. | Undisclosed | April 1, 2022 |
| Michelin N.A. | 5% | April 1, 2022 |
| BSAM | 10% | April 1, 2022 |
| Pirelli Tire | 10% | April 11, 2022 |
| Continental U.S. | Undisclosed | June 1, 2022 |
| Michelin N.A. | 5-12% | June 1, 2022 |
| Pirelli Tire | Up to 10% | June 15, 2022 |
| Goodyear | Up to 10% | July 1, 2022 |
| BSAM | Up to 10% | July 1, 2022 |
| BSAM | Up to 15% | October 1, 2022 |
| Michelin N.A. | Up to 9% | January 1, 2023 |
| BSAM | Undisclosed | January 1, 2023 |

52.     The extremely profitable effect of these coordinated price increases was not lost on Defendants. During a conference call with investors, Defendant Goodyear's Chief Administrative Officer Darren Wells stated "[W]e've got to acknowledge that we've got major competitors who have announced 2 or 3 price increases during calendar year '22. And Goodyear, North America has announced one increase of up to 12% on January 1. Now the announcements of our competitors generally have been in lower amounts, but there have been a couple of them that have been double digits. So we have to acknowledge that. And then if we go back to last year, Goodyear announced 3 price increases of up to 8% during 2021. And our major competitors announced 3 or 4 price increases generally as well, some of which

were unspecified in amounts, but most of which were in the mid-single digits. Yes. So those are the announcements that we've seen."[43]

53.     In addition to colluding to set prices at supracompetitive prices, Defendants likewise colluded to reduce the supply of Tires.

54.     Though there was a marked decrease in demand for Tires during 2020 due to the COVID-19 pandemic, by the start of 2022, demand had bounced back to pre-pandemic levels. For example, Defendant Continental U.S.'s 2022 Annual Report states that "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[44] Further, Defendant Goodyear's Darren Wells reiterated that "increase in the replacement Tire prices more than offset costs."[45]

55.     Despite the fact that demand had returned to pre-pandemic levels and that Defendants were sitting on a surplus of supply, Defendants continued to raise the price of Tires going to market. Rather than keep the manufacturing scale of Tires

---

[43] Ex. 39, Goodyear, Q1 2022 Interim Results Earnings Call Transcripts (https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022results-earnings-call) (May 6, 2022).

[44] Ex. 40, Continental, 2022 Annual Report at 73 (https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf).

[45] Ex. 41, Goodyear, Q1 2022 Interim Results Earnings Call Transcripts (https://seekingalpha.com/article/4507956-goodyear-tire-and-rubber-company-gt-ceo-rich-kramer-on-q1-2022results-earnings-call) (May 6, 2022).

constant and reducing the price of Tires—a rare opportunity to cut into a competitor's market share—Defendants cut Tire supply and maintained Tire prices at uniformly high rates. For example, Defendant Goodyear announced that "in order to address softening industry demand and prevent the buildup of excess inventory, we reduced production in the fourth quarter of 2022 at most of our Tire manufacturing facilities, resulting in a reduction of approximately 3.5 million units compared to production in the fourth quarter of 2021."[46]

## B. EU Raids Tire Companies' Offices

56.    On January 30, 2024, European antitrust enforcers conducted raids at Defendants' offices as part of an investigation into price coordination within the industry.[47]

57.    The European Commission voiced concern that Defendants had violated antitrust law by coordinating prices through methods that include public communications.[48]

---

[46] Ex. 42, The Goodyear Tire & Rubber Company, 2022 Annual Report at 7 (https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf).

[47] Ex. 43, Michael Perlman, *EU Tire Cartel Probe Targets Michelin, Continental*, Law 360 (https://www.law360.com/articles/1791624/eu-tire-cartel-probe-targets-michelin-continental) (Jan. 30, 2024).

[48] *Id.*

58.    The probe is focused on the sale of new replacement Tires for passenger cars, vans, buses, and trucks.[49]

59.    This is not the first time multiple of these defendants have faced antitrust scrutiny. For example, Defendant Continental was fined 44 million euros for its participation in a cartel for hydraulic braking systems;[50] in 2014, Defendant Bridgestone plead guilty to playing a role in a conspiracy to fix the prices of automotive anti-vibration rubber parts installed in cards sold in the United States.[51]

60.    The immediate concern about price coordination within the Tire industry comes after several years during which Defendants' profits increased and Tire prices hiked dramatically.

---

[49] *Id.*

[50] *Id.*

[51] Ex. 44, Department of Justice, *Bridgestone Corp. Agrees to Plead Guilty to Price Fixing on Automobile Parts Installed in U.S. Cares* (https://www.justice.gov/opa/pr/bridgestone-corp-agrees-plead-guilty-price-fixing-automobile-parts-installed-us-cars#:~:text=Bridgestone%20Corp.%2C%20a%20Tokyo%2C,Department%20of%20Justice%20announced%20today) (Feb. 13, 2014).

61.     Since 2021, the average price of Tires has risen by roughly 21%, a rate more than 70% higher than inflation.[52] For Defendant Goodyear, income increased 19.7% from 2021 to 2022 "due to improvements in price".[53]

### C. Industry Background

62.     Manufacturing tires is a multi-step process. First, rubbers are mixed together to create a specific rubber compound tailored to the desired performance of the tire. The compound is then molded into various shapes to be used on different parts of the tire. Next, the rubber is pressed into a reinforced sheet to be cut into strips. The tire is built from the inside out by wrapping the pressed strips around a drum and forcing them together. The tire is then cured by placing it into a mold and steaming the tire into shape. The tire is measured and tested before going to market.[54]

63.     Defendants manufacture and sell two types of Tires: Original Equipment Tires and Dedicated Replacement Tires. The former of these are purchased and fitted to new cars by vehicle manufacturers; the latter are purchased

---

[52] Ex. 45, Michael, Grabell, *Overinflated: The Journey of a Huble Tire Reveals Why Prices Are Still So High*, Pro Publica (https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices) (May 3, 2023).

[53] Ex. 46, Goodyear, Annual Report 2022 (https://corporate.goodyear.com/us/en/investors/financial-reports/annual-reports.html).

[54] Ex. 47, Goodyear, *How Are Tires Made?* (https://www.goodyear.com/en_US/learn/tire-basics/how-are-tires-made.html).

by consumers and retailers, as their name indicates, to replace tires already on a vehicle.

64.　At the start of 2023, there were roughly 286 million vehicles in the United States.[55] The vast majority of these vehicles require replacement Tires.

65.　In 2022, the United States market for replacement Tires exceeded $61 billion.

**D. The Tire Industry is Highly Susceptible to Anticompetitive Conduct**

66.　The Tire industry has all the hallmark features found in highly-cartelized markets, including: (1) a commodity product; (2) a highly concentrated market; (3) high barriers to entry; and (4) inelastic demand.

67.　Tires are a commodity product. That is, they are basic items that are largely interchangeable across manufacturers.

68.　All Tires denote certain information on the Tire itself, including the vehicle type the Tire is suitable for, width, aspect ratio, construction, RIM diameter, load index, and speed rating.[56]

---

[55] Ex. 48, Mathilde Carlier, *Number of vehicles in operation in the United States between 1st quarter 2018 and 1st quarter 2023*, Statista (https://www.statista.com/statistics/859950/vehicles-in-operation-by-quarter-united-states/) (Dec. 19, 2023).

[56] Ex. 49, Bridgestone Americas, *Determining Tire Size* (https://www.bridgestoneamericas.com/en/company/safety/choosing-tires/determining-tire-size).



69.    Because all Tires are readily interchangeable, competition among manufacturers is primarily based on price as opposed to other attributes such as product quality or customer service. Colluding to set market prices at supracompetitive levels is therefore highly profitable to all Defendants.

70.    The Tire industry is an extremely lucrative one. However, a large swath of the market is made up of just a handful of companies, dominated by Defendants.[57] Together, Defendants have a combined market share of over 70%. Because of the high concentration of the market, it is susceptible to collusion.

---

[57] Ex. 50, Defendant Continental U.S. is also noted to have close to 5% market share. Traqline, *The 'Goliaths' of the Replacement Tire Industry Are Getting Bigger. How Can The 'Davids'' Compete?* (https://www.traqline.com/newsroom/blog/the-goliaths-of-the-replacement-tire-industry-are-getting-bigger-how-can-the-davids-compete/) (Feb. 14, 2022).



71.     The United States Tire market is even more highly concentrated. In 2022, Defendants Goodyear, Michelin, and Bridgestone accounted for over 60% of the total industry revenue as illustrated in the chart above.[58] Defendants Continental and Nokian likewise added to Defendants total U.S. market share. A highly concentrated market creates ideal conditions for forming a cartel.

72.     When the vast majority of a market is held by a very few number of entities, coordination among competitors is facilitated. A small number of members

---

[58]     Ex.   51,   IBIS   World,   *Tire   Manufacturing   in   the   US* (https://www.ibisworld.com/united-states/market-research-reports/tire-manufacturing-industry/#IndustryStatisticsAndTrends).

in a cartel ensures maximum trust and cooperation among competitors, in addition to simplifying the negotiations for agreeing on a cartel price, allocating market shares, and concealing collusion. It also makes the detection and punishment of defectors much easier.

73.    Defendants are members of an industry trade association which they used to facilitate their conspiratorial conduct. The trade association, the U.S. Tire Manufacturers Association (USTMA), has annual events and meetings at which they can communicate with one another in person.

74.    Defendants have ample opportunity to meet and exchange commercially sensitive information with one other as members of USTMA. The USTMA is a national trade association for tire manufacturers that produce tires in the United States. According to its website, USTMA members operate 57 facilities in 17 states, are responsible for more than 291,000 jobs, and have an "annual economic footprint of $170.6 billion."[59]

75.    Executives from Defendants' corporations are heavily represented in the leadership of USTMA. Alexis Garcin, the Chairman and President of Defendant Michelin N. A., holds the top position at USTMA.[60] Paolo Ferrari—President, Chief

---

[59]    Ex. 52, U.S. Tire Manufacturers Association, *About Us* (https://www.ustires.org/about-us).

[60]    Ex. 53, U.S. Tire Manufacturers Association, *Leadership* (https://www.ustires.org/leadership).

Executive Officer, Chief Operating Officers of Defendant BSAM—is the Chairman of USTMA. David Reese (Vice President of Defendant Goodyear), Alan Yarcusko (Vice President of Defendant Goodyear), Jochen Etzel (Chief Executive Officer of Defendant Continental U.S.), Tommi Heinonen (Vice President of Defendant Nokian U.S.), and Maureen Kline (Vice President of Defendant Pirelli Tire) all sit on the USTMA's Board of Directors.[61] Executives of Defendant companies therefore regularly meet to discuss market conditions and issues.

76.     Where prices have been artificially inflated and market participants benefit from supracompetitive pricing, new market participants should be attracted to the industry. However, in markets that have high barriers to entry, it is extremely difficult for new entrants to gain foothold in the market.

77.     The Tire market has high barriers to entry, which include: significant start-up costs of manufacturing; maintaining and development of multi-million dollar facilities; investments in research and development; and finding and training a large workforce.

---

[61] *Id.*

78.     For example, Defendant Nokian U.S. recently built a $360 million manufacturing facility in Dayton, Ohio.[62] Defendant Nokian U.S. also mentioned it would be vastly expanding its workforce to staff the new facility.

79.     Barriers to entry such as these further restrict competition in the Tire market and makes it easier for incumbents to collude.

80.     The price of a product is inelastic when purchasers are relatively insensitive to changes in the price. For example, demand is said to be inelastic if an increase in the price of a product results in only a small decline in the quantity sold of that product, if any.

81.     The Tire market is inelastic: purchasers must continue to buy Tires in order to use their vehicles regardless of price. Purchasers have no alternatives to buy cheaper alternative tires of similar quality; as such, purchasers have no choice but to continue to buy Tires at the same rate despite price increases.

82.     Because purchasers will continue to buy Tires despite price increases, cartels can safely raise prices to supracompetitive prices without sacrificing a decrease in profit. In this way, inelasticity of demand facilitates collusion.

83.     Because of the inelasticity of the demand for Tires, Defendants raised prices to supracompetitive prices and netted huge revenues as a result. For example,

---

[62]     Ex. 54, Nokian, *Nokian Tyres' North American Factory* (https://www.nokiantires.com/daytonfactory/).

Defendant BSAM had raised Tire prices four times during the year by July 2022.[63]

Defendant Goodyear raised Tire prices five times between January 2021 and July

2022.[64] And, Defendant Continental U.S. also increased its Tire prices in Summer

2022—the sixth increase in the preceding 16 months.[65] Scott Damon, CEO of

Defendant BSAM, went so far as to state they were "certainly seeing a red-hot

economy that, despite the price increases and inflation, demand still remains quite

strong."[66]

## V. CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this this action on behalf of himself and as a class action

under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), seeking damages

and injunctive relief pursuant to federal law on behalf of the members of the

following Plaintiff Class:

> All persons or entities in the United States and its territories that
> purchased Tires directly from Defendants or any co-conspirators, or
> their respective subsidiaries or affiliates, from at least as early as
> January 1, 2020 to the present.

---

[63] Ex. 55, Tire Business, *Rising tire prices affected by several factors* (https://www.tirebusiness.com/news/rising-tire-prices-affected-several-factors) (July 8, 2022).

[64] *Id.*

[65] *Id.*

[66] *Id.*

85.     Specifically excluded from the Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded from the Class are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action, and any co-conspirator identified in this action.

86.     **Class Identity:** The above-defined Class is readily identifiable and is one for which records should exist.

87.     **Numerosity:** Plaintiff does not know the exact number of class members because such information presently is in the exclusive control of Defendants. However, due to the nature of the trade and commerce involved, there are thousands of class members geographically dispersed throughout the United States, such that joinder of all class members is impracticable.

88.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased Tires directly from one or more of the Defendants, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the Class and the relief sought is common to the Class.

89.     **Common Questions Predominate:** There are questions of law and fact common to the Class, including, but not limited to:

**a.** Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to fix, raise, elevate, maintain, or stabilize prices of Tires sold in interstate commerce in the United States

**b.** Whether Defendants and their co-conspirators engaged in an agreement, combination, or conspiracy to limit the supply of Tires during the Class Period;

**c.** The identity of the participants of the alleged conspiracy;

**d.** The duration of the conspiracy alleged herein and the acts performed by Defendants and their co-conspirators in furtherance of the conspiracy;

**e.** Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiff and the other members of the Class;

**f.** The effect of Defendants' alleged conspiracy on the price of Tires sold in the United States during the Class Period;

**g.** Whether Plaintiff and other members of the Class are entitled to, among other things, injunctive relief and if so, the nature and extent of such injunctive relief; and

**h.** The appropriate class-wide measure of damages.

These and other questions of law or fact, which are common to the members of the Class, predominate over any questions affecting only individual members of the Class.

90.     **Adequacy:** Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff's interests are aligned with, and not antagonistic to, those

of the other members of the Class who directly purchased Tires from Defendants. Plaintiff has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent themselves and the Class.

91.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Class is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by individual members of the Class compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for members of the Class to seek redress for the violations of law herein alleged. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, a class action presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

92.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

93.     Plaintiff brings this class action on behalf of all persons similarly situated pursuant to Rule 23, on behalf of all persons and entities that directly

purchased one or more Tires that a Defendant or co-conspirator produced during the Class Period.

94.    Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief appropriate with respect to the Class as a whole.

## VI. EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

95.    Throughout the Class Period, Defendants effectively, affirmatively, and fraudulently concealed their unlawful combination and conspiracy from Plaintiff and the Class.

96.    The combination and conspiracy alleged herein was fraudulently concealed by the Defendants by various means and methods, including, but not limited to meetings, surreptitious communications between Defendants by the use of the telephone or in-person meetings in order to prevent the existence of written records, limiting any explicit reference to competitor pricing or supply-restraint communications on written documents, and concealing the existence and nature of their competitor supply-restraint and price discussions from non-conspirators

97.    Defendants' anticompetitive conspiracy, by its very nature, was self-concealing. Tires are not exempt from antitrust regulation, and thus, before these recent events Plaintiff reasonably considered it to be a competitive industry. Accordingly, a reasonable person under the circumstances would not have been

alerted to begin to investigate the legitimacy of Defendants' Tire prices before the European Commission raids became public.

98.     By virtue of the fraudulent concealment of their wrongful conduct by the Defendants and all of their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiff and the Class have as a result of the unlawful combination and conspiracy alleged in this complaint.

## VII. ANTITRUST INJURY

99.     Defendants' anticompetitive conduct had the following effects, among others:

>       **a.** Price competition has been restrained or eliminated with respect to Tires;
>
>       **b.** The prices of Tires have been fixed, raised, stabilized, or maintained at artificially inflated levels;
>
>       **c.** Direct purchasers of Tires have been deprived of free and open competition; and
>
>       **d.** Direct purchasers of Tires paid artificially-inflated prices.

100.    The purpose of the conspiratorial conduct of the Defendants and their co-conspirators was to raise, fix, or maintain the price of Tires. As a direct and

foreseeable result, Plaintiff and the Class paid supra-competitive prices for Tires during the Class Period.

101. By reason of the alleged violations of the antitrust laws, Plaintiff and the Class have sustained injury to their businesses or property, having paid higher prices for Tires than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy and as a result have suffered damages.

102. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## VIII. VIOLATION OF SECTION 1 OF THE SHERMAN ACT
### (15 U.S.C. § 1)

103. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

104. Beginning at a time currently unknown to Plaintiff, but at least as early as January 1, 2020, and continuing through the present, Defendants and their co-conspirators entered into and engaged in a continuing agreement, understanding, and conspiracy in unreasonable restraint of trade to artificially fix, raise, and stabilize the price for Tires in the United States, thereby creating anticompetitive effects, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

105. Defendants' acts in furtherance of their combination or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

106. In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendants committed the acts, practices, and course of conduct set forth above and the following (among others):

a. Exchanging competitively sensitive information with the aim and result of fixing, raising, and stabilizing the price of Tires in the United States;

b. Participating in meetings and conversations during which they agreed to raise, fix, and stabilize Tire prices at certain levels in the United States;

b. Participating in meetings and conversations to implement, adhere, and enforce the agreements they reached.

107. The combination and conspiracy alleged herein has had the following effects, among others:

a. Price competition in the sale of Tires has been restrained, suppressed, and/or eliminated in the United States;

b. Prices for Tires sold by Defendants, their divisions, subsidiaries, and affiliates, and all of their co-conspirators have been fixed, raised, stabilized, and maintained at artificially high, non-competitive levels throughout the United States; and

    c. Plaintiff and the Class who directly purchased Tires from Defendants, their divisions, subsidiaries, and affiliates, and all of their co-conspirators, have been deprived of the benefits of free and open competition in the purchase of Tires.

108. Defendants' anticompetitive acts had a direct, substantial, and foreseeable effect on interstate commerce by raising and fixing prices for Tires throughout the United States because Defendants sell their Tires throughout the country and in every state.

109. The conspiratorial acts and combinations have caused unreasonable restraints in the market for Tires.

110. Plaintiff and the Class have been injured and will continue to be injured in their businesses and property by paying more for Tires purchased directly from the Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

111. The alleged contract, combination, understanding, agreement, or conspiracy is a *per se* violation of the federal antitrust laws.

112. Plaintiff and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themself and the Class of all others similarly situated, respectfully request judgment against Defendants as follows:

A.   The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiff as Class Representative and their counsel of record as Class Counsel, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class, once certified;

B.   The unlawful conduct, conspiracy, or combination alleged herein be adjudged and decreed an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act and a *per se* violation of Section 1 of the Sherman Act;

C.   Plaintiff and the Class recover damages, to the maximum extent allowed under federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the members of the Class be entered against Defendants in an amount to be trebled under U.S. antitrust laws;

D.   Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other

conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

E.      Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

F.      Plaintiff and the Class be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

G.      Plaintiff and the Class recover their costs of suit, including reasonably attorneys' fees, as provided by law; and

H.      Plaintiff and the Class have such other and further relief as the case may require and the Court may deem just and proper.

## X. JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues so triable.

Dated: March 12, 2024                    */s/ E. Powell Miller*
                                         E. Powell Miller (P39487)
                                         Dennis A. Lienhardt (P81118)
                                         **THE MILLER LAW FIRM, P.C.**
                                         950 W. University Dr., Suite 300
                                         Rochester, MI 48307
                                         Tel: (248) 841-2200
                                         epm@millerlawpc.com
                                         dal@millerlawpc.com

                                         Daniel E. Gustafson
                                         Daniel C. Hedlund
                                         Michelle J. Looby
                                         Frances Mahoney-Mosedale
                                         **GUSTAFSON GLUEK PLLC**
                                         Canadian Pacific Plaza
                                         120 So. Sixth Street, Suite 2600
                                         Minneapolis, MN 55402
                                         Tel: (612) 333-8844
                                         Fax: (612) 339-6622
                                         dgustafson@gustafsongluek.com
                                         dhedlund@gustafsongluek.com
                                         mlooby@gustafsongluek.com
                                         fmahoneymosedale@gustafsongluek.com

                                         Dianne M. Nast
                                         Daniel N. Gallucci
                                         Michael S. Tarringer
                                         **NASTLAW LLC**
                                         1101 Market Street
                                         Suite 2801
                                         Philadelphia, PA 19107
                                         Tel: (215) 923-9300
                                         Fax: (215) 923-9302
                                         dnast@nastlaw.com
                                         dgallucci@nastlaw.com
                                         mtarringer@nastlaw.com

                                         *Counsel for Plaintiff and the Putative Class*